UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

WILLIAM K. DIXON,

    Plaintiff,

v.

WARDEN FRANK B. BISHOP, JR.,
RICHARD S. RODERICK,
*Head Case Manager & Acting Warden*,
ASSISTANT WARDEN JEFFERY NINES,
DAYENA M. CORCORAN, *Commissioner*,
WILLIAM S. BOHRER, *Security Chief*,
JASON L. HARBAUGH, *Captain*,
MARK J. CARTER, *Executive Director, IID*,
LT. EVAN ORNDORFF,
LT. JARED ZAIS,
LT. BRANDON CABLE,
LT. WILLIAM GILLIAM,
LT. JEREMY CRITES,
LT. ROBERT CROSS,
LT. VAUGHN WHITEMAN,
LT. GEORGE MALPINE,
LT. JACK JOHNS,
SGT. ANTHONY FRENZTAL, JR.,
SGT. GARY J. DROZDA,
SGT. DAVID ELLIFRITZ,
SGT. JANE DOE MILLER,
SGT. W. LEYDIG,
C.O. II GORY BEAN,
C.O. II JOHN DOE WALT,
C.O. II JOHN DOE DOLLY,
C.O. II C. GILPEN,
C.O. II J. MOST,
C.O. II CHRISTEL V. KELLY,
C.O. II CORALYN PRICE,
NURSE TAMMY and
SGT./LT. JAMIE FARRIS, *Hearing Officer*,

    Defendants.

Civil Action No. TDC-19-0740

**MEMORANDUM OPINION**

Plaintiff William K. Dixon, currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a civil action against Defendants[1] Frank B. Bishop, Jr., NBCI Warden; NBCI Case Manager Richard S. Roderick; NBCI Assistant Warden Jeffery Nines; Dayena M. Corcoran, Commissioner of Correction, Maryland Department of Public Safety & Correctional Services ("DPSCS"); NBCI Chief of Security William S. Bohrer; Captain Jason L. Harbaugh; Executive Director Mark J. Carter; Captain Evan Orndorff; Lieutenant Jared Zais; Lieutenant Brandon Cable; Lieutenant William Gillum; Lieutenant Jeremy Crites; Captain Robert Cross; Lieutenant Vaughn Whiteman; Acting Captain George McAlpine; Lieutenant Jack Johns; Sergeant Anthony Frenzel; Sergeant Gary Drozda; Sergeant David Ellifritz; Sergeant William Leydig; Correctional Officer II ("CO II") Jeremy Bean; CO II Cody Gilpin; CO II Joseph Most; CO II Christel V. Kelley; Hearing Officer Jamie Farris; and CO II Carolyn Price (collectively, the "Correctional Defendants"); Sgt. Jane Doe Miller; CO II John Doe Walt; CO II John Doe Dolly; and Nurse Tammy. In his unverified Complaint, Dixon asserts a violation of his constitutional rights arising from an alleged sexual assault that took place at NBCI on January 31, 2017 and events following the seizure of a weapon from his cell on January 24, 2018.

Pending before the Court are Dixon's Motion for Preliminary Injunction and the Correctional Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Correctional Defendants' Motion, construed as a Motion for Summary Judgment, is GRANTED, and Dixon's Motion is DENIED.

---

[1] The Clerk shall amend the docket to reflect the full and correct names of Defendants William Gillum, George McAlpine, Anthony Frenzel, William Leydig, Jeremy Bean, Cody Gilpin, Joseph Most, Christel Kelley, and Carolyn Price.

Although Defendants Miller, Walt, Dolly, and Nurse Tammy were not served with the Complaint, Dixon's claims against them are DISMISSED pursuant to 28 U.S.C. § 1915A.

## BACKGROUND

### I. The January 31, 2017 Incident

On January 31, 2017, Defendants Sgt. David Ellifritz and Sgt. Gary Drozda came to Dixon's cell to conduct a random search of both the cell and Dixon. The search procedure required that Dixon be placed in handcuffs and removed from the cell while the cell was thoroughly searched for contraband, and that Dixon submit to a strip search. When the officers arrived, Dixon was naked and using the toilet. Dixon asserts that he asked the officers to close the door, but they left it open "and made comments about 'destroying my anus and how black plaintiff['s] buttocks are." Compl. ¶ 3, ECF No. 1.

According to Dixon, Drozda stated that he was a homosexual and made sexual remarks as he escorted Dixon to a cage, where he forced Dixon to strip naked, bend over at the waist, and repeatedly spread his buttocks. Drozda denies making any sexual remarks or discussing anyone's sexual orientation. In addition, Drozda and Ellifritz deny that they ever harassed Dixon or encouraged anyone else to harass him in any way.

Dixon refused to comply with all of Drozda's orders and requested a supervisor. Lt. Jeremy Crites then arrived and informed Dixon that he would be left naked in the cage until he performed the strip search properly. Dixon refused. After approximately 45 minutes, Lt. Vaughn Whiteman arrived and told Dixon that he would remain in the cage naked until he performed the strip search properly. According to Dixon, Whiteman used a racial slur, and CO II Ernest Dolly, CO II Jeremy Bean, and CO II Walt arrived and made sexually abusive statements regarding Dixon's "penis size and length of time naked in the cage." Compl. ¶ 6.

3

Crites filed a Notice of Inmate Rule Violation against Dixon, stating that he observed Dixon shaking his genitals at various staff members and yelling obscenities. According to Crites, he warned Dixon that if he did not stop, he would be written up for an infraction and sent to Housing Unit 1 ("HU1"), but Dixon replied, "fuck it, let's go" and continued to shake his genitals. Intelligence and Investigative Division ("IID") Records at 28, Mot. Summ. J. Ex. 8, ECF No. 15-10. Due to his refusal to follow the strip search procedure, Crites charged Dixon with several infractions, and he was transferred to HU1.

When an inmate is sent to another housing unit, a strip search is required in order to prevent contraband from leaving or entering a unit. For example, when moving from HU2 to HU1, an inmate will be searched before leaving HU2 and then again before entering HU1. Once Dixon was moved to HU1, he was placed in another strip cage, where Sgt. Anthony Frenzel asked him to strip again. Dixon refused. Lt. Robert Cross, who was the supervisor in HU1, and Lt. William Gillum told Dixon that if he did not comply, a team would be called in to conduct the strip search. Dixon then complied and removed his clothing on his own.

On February 28, 2017, Dixon filed an administrative remedy procedure grievance ("ARP"), ARP No. NBCI-0472-17, in which he asserted that he was not permitted to be present during the January 31, 2017 cell search and that some of his personal property was taken, including a television, Sony PlayStation, a Clear Tech Walkman, and a fan. Dixon did not mention the strip search in the ARP. Following an investigation by Whiteman, Acting Warden Richard Roderick dismissed the ARP, finding that Dixon could not prove ownership of the watch and Walkman, and that the PlayStation was contraband.

On November 3, 2017, Dixon filed another ARP, No. NBCI-2572-17, claiming that he was "subjected to constant sexual abuse violations throughout the evening" of January 31, 2017. NBCI

4

Records at 24, Mot. Summ. J. Ex. 5, ECF No. 15-7. Because the ARP was filed more than nine months after the alleged incident, the ARP coordinator found that it was not received within the proper timeframe and dismissed it.

On or about November 30, 2017, Dixon filed a claim pursuant to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301–30309 (2018), along with an ARP alleging that on January 31, 2017, he was sexually harassed by Crites, Drozda, Dolly, Bean, Ellifritz, and Whiteman. On February 27, 2018, Dixon was interviewed by an IID investigator. Although he alleged that the correctional officers made several sexually explicit comments during the strip search, he acknowledged that they never physically touched him and that all of the abuse was verbal. In IID interviews, the correctional officers named in Dixon's ARP denied the accusations and stated that they did not see any of the correctional officers act inappropriately. According to the IID report, when Dixon was seen by medical staff on February 2, 2017, he made no allegations of PREA violations. Based on Dixon's inability to answer questions relating to his written accusations and his inability to provide any credible witnesses to the January 31, 2017 incident, his PREA case was recommended for closure on December 19, 2018. According to Dixon, he received no response to his PREA claim.

## II. Additional Incidents

Meanwhile, on January 24, 2018, a weapon, consisting of a piece of plastic carved into the shape of a knife blade, was discovered in Dixon's mattress. Dixon claims that he had the weapon because he was "sick and tired" of being sexually harassed by correctional officers. Compl. ¶ 10. In a written statement, Dixon stated, "Several officers sexually harass me in this institution. I fear for my safety. I take the charge for whatever the[y] find." NBCI Records at 21. Dixon was then seen by health care personnel and placed in a cell without further incident.

Sgt. William Leydig wrote a Notice of Infraction relating to the incident. As a result of having contraband, Dixon was strip searched for security reasons, pursuant to prison policy. Sgt. William Leydig made the decision to conduct the strip search and wrote a Notice of Rule Infraction against Dixon.

On April 23, 2018, Dixon was placed in a cell in HU2 near where Defendants Drozda, Whiteman, and Crites were stationed. When Dixon attempted to leave the area, he received an infraction and was placed in disciplinary segregation as a result. According to Dixon, in this time frame Lt. Brandon Cable strip searched him in both HU2 and HU1, and Sgt. Miller lost some of his property. Because Captain Jason Harbaugh and Acting Warden Roderick concluded that Dixon was not in imminent danger when he was placed near Drozda, Whiteman, and Crites, Dixon lost good time credits. According to Dixon, when he was returned to HU2, Correctional Officer Christel Kelley issued a Notice of Infraction with the approval of Lt. George McAlpine and Lt Evan Orndorff. Hearing Officer Jamie Farris then found Dixon guilty of violating Rule 119 (masturbation).

Dixon alleges that around the time of the April 23, 2018 incident, and again on August 16, 2018, "Nurse Tammy" denied him his medication. Compl. ¶¶ 11-12. He asserts that the matter was not properly investigated by Lt. Jack Johns. Dixon also alleges, without identifying a time frame, that he was not allowed to be present while Defendants Most, Miller, and Gilpin performed an inventory of his property. Lastly, Dixon alleges that he was in imminent danger again on February 14, 2019, when he was placed in a cell near where Drozda was stationed.

In his Complaint, Dixon has alleged a violation of PREA, violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and common law

6

negligence. Specifically, Dixon claims that Defendants inflicted cruel and unusual punishment, showed deliberate indifference, and wrongfully searched and seized his property.

## DISCUSSION

### I. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In their Motion, the Correctional Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. They argue that: (1) Dixon has failed to state facts sufficient to establish a violation of due process rights; (2) the imposition of a strip search is insufficient to establish any violation of the Constitution; (3) recovery for damages is not allowed under the Prisoner Litigation Reform Act in the absence of physical injury; (4) allegations related to personal property do not state a constitutional claim; (5) Dixon fails to state a valid claim under the Eighth Amendment; (6) PREA does not create a private right of action; (7) Dixon has not alleged any facts against Defendants William Bohrer and Jared Zais; (8) all supervisors should be dismissed as there is no vicarious liability; and (9) the Correctional Defendants are entitled to qualified immunity.

#### A. Legal Standards

The Correctional Defendants filed their Motion as a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510

U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Correctional Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Dixon has not filed an affidavit or declaration under Rule 56(d) or otherwise stated a specific need for discovery. Therefore, on the issues for which consideration of exhibits is required, the Court will construe the Motion as seeking summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. PREA

As an initial matter, the Court notes that PREA authorized grant money and created a commission to study rape in prisons, but it did not create a private right of action for inmates. *See Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017); *Williams v. Dovey*, No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016); *DeLonta v. Clarke*, No. JCT-11-0483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012), *aff'd sub nom, DeLonta v. Pruitt*, 548 F. App'x 938 (4th Cir. 2013). Therefore, Dixon's PREA claim necessarily fails as a matter of law and will be dismissed.

### C. Eighth Amendment

Dixon asserts a violation of the Eighth Amendment for deliberate indifference to his health and safety based on the alleged sexual harassment on January 31, 2017, his placement in a housing unit near Defendants Drozda, Whiteman, and Crites on April 23, 2018, and his placement near Drozda on February 14, 2019.

9

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As to the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9).

Although Dixon states that he was using the toilet when Drozda and Ellifritz arrived, he does not allege that they were unauthorized to search him and his cell at that time. Moreover, Dixon has failed to demonstrate that the Correctional Defendants used force against him. Dixon

10

was escorted to the strip cage and instructed to strip naked, bend over at the waist, and spread his buttocks. When Dixon refused to comply, other officers were summoned, and he eventually cooperated. The offending conduct, however, was not physically removing Dixon's clothes or any kind of sexual assault. Rather, the offending conduct consisted of sexual remarks by Drozda, and the use of a racial slur and comments about Dixon's buttocks and genitals by other officers. During the IID investigation, Dixon stated during an interview that the correctional officers never physically touched him and that all of the abuse was verbal. Although Dixon was seen by medical staff two days after the alleged incident, he made no complaint of, and there is no evidence of, any sexual assault.

Verbal abuse of inmates by guards, without more, does not establish an Eighth Amendment violation. *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). Specifically, "[a]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.'" *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (per curiam) (quoting *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004)).

Here, the racially and sexually charged language allegedly used by the Correctional Defendants was more graphic and troubling than the verbal harassment referenced in the cited cases. If made, the comments about the color of Dixon's buttocks, the size of his genitals, and whether he masturbated frequently were entirely inappropriate. The Court does not foreclose the possibility that verbal sexual and racial harassment of a prisoner could be so extreme and severe that it could be deemed a form of punishment that violates the Constitution. However, even if the alleged sexual harassment arguably could reach such a level, the Correctional Defendants would

be entitled to qualified immunity, because there is no clearly established law holding that verbal sexual harassment alone violates the Eighth Amendment. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (stating that "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time'") (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Thus, the Court will grant the Motion as to the events of January 31, 2017.

As for whether Dixon's Eighth Amendment rights were violated when he was placed in a cell near where Drozda and other Correctional Defendants were stationed, this claim also fails. First, it is firmly established that prisoners do not have a constitutional right to be housed in one prison or housing unit rather than another, absent a showing of significant hardship. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."); *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (requiring an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" as a prerequisite to a constitutionally protected liberty interest in a prisoner's housing placement). "In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns" facing inmates. *Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002) (addressing segregation of homosexual male inmates).

Second, although correctional officials could violate Eighth Amendment rights by placing a prisoner in proximity to other inmates known to pose a substantial risk to the health and safety of the prisoner, *see Farmer v. Brennan*, 511 U.S. 825, 830-31, 843-44 (1994), here, Dixon has not

alleged any physical harm that resulted from his placement near these correctional officers. He has not even alleged that they engaged in additional verbal harassment while he was on their tier. Accordingly, the Court concludes that there is no genuine issue of material fact on Dixon's Eighth Amendment claims. The Motion will be granted as to these claims.

**D.     Due Process**

Construing his Complaint liberally, Dixon also claims that the Correctional Defendants violated his due process rights when they searched his cell and seized his personal property. Dixon also arguably contends that he received infractions without due process, and that Warden Bishop and other Correctional Defendants improperly denied his ARPs relating to the seizure of his personal property and the strip search incident on January 31, 2017.

To the extent that Dixon is claiming that his Fourth and Fourteenth Amendment rights were violated when correctional officers confiscated his television, PlayStation, and other personal property, his claim is unavailing. Claims of negligent deprivation of property by a prison official do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 332, 335-36 (1986). A claim of intentional deprivation of property by a prison official also does not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tydings v. Dep't of Corrs.*, 714 F.2d 11, 12 (4th Cir. 1983) (finding that Virginia law provides for an adequate post-deprivation remedy). The right to seek damages and injunctive relief in Maryland courts in a tort action constitutes an adequate post-deprivation remedy for inmates in Maryland prisons. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) ("[T]here is no question that the relief available to plaintiff in state court is adequate."); *see also Hawes v. Foxwell*, No. DKC-17-2598, 2018 WL 2389060, at *4 (D. Md. May 25, 2018) (noting that the Maryland Tort Claims Act and a prison's

13

Inmate Grievance Office provide adequate post-deprivation remedies); *Fuller v. Warden*, No. WMN-12-0043, 2012 WL 831936, at *2 (D. Md. Mar. 8, 2012). Thus, the claim that Dixon's personal property was intentionally taken or destroyed does not state a constitutional claim for relief. *See, e.g., Young-Bey v. Miller*, No. JKB-16-3435, 2018 WL 4108076, at *4 (D. Md. Aug. 29, 2018) (holding that a claim that personal property was destroyed did not assert a constitutional violation); *Hawes*, 2018 WL 2389060, at *4 (dismissing an inmate's property loss claim for failure to state a cognizable constitutional claim); *Fuller v. Horning*, No. WMN-11-1917, 2012 WL 2342947, at *7 (D. Md. June 19, 2012) (stating that "removal of property from a prisoner simply does not state a constitutional claim"), *aff'd*, 504 F. App'x 218 (4th Cir. 2013);

To the extent that Dixon asserts a due process claim arising from the Correctional Defendants' alleged failure to process his ARPs properly and wrongful charging of Dixon with infractions, those claims also fail. Dixon's ARP complaining that he was not given the chance to be present during the cell search when his property was allegedly taken was dismissed because Dixon could not prove ownership of certain items while others were contraband. Dixon's ARP regarding the January 31, 2017 strip search was filed more than nine months after the alleged incident and was dismissed as untimely filed. Another ARP relating to that incident, filed with a PREA complaint, resulted in the IID investigation that was closed because of Dixon's inability to answer questions about his written accusations and to provide any credible witnesses to the event.

"[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 541 (4th Cir. 2017). Because prisons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints, any failure to abide by the administrative remedy procedure or to process ARPs in a certain way does not create a

constitutional claim. *See Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993); *Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, *arguendo*, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated."); *Ireland v. Morgan*, No. WDQ-10-1943, 2012 WL 503820, at *7 (D. Md. Feb. 14, 2012).

Finally, as to due process claims relating to infractions, certain due process protections are required where an inmate faces the possible loss of diminution or good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). If these procedural protections are provided, due process will be satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). Although Dixon has alleged that he lost good conduct credits as a result of the weapon infraction, Dixon has acknowledged that he had a weapon in his cell. Even with his claim that he needed it because of ongoing sexual harassment by correctional officers, that admission provides sufficient evidence to defeat any due process claim arising from that infraction. Likewise, to the extent that he asserts that he lost good conduct credits for leaving HU2 because of the presence of the Correctional Defendants, he has acknowledged the existence of evidence for the violation that meets the minimal threshold required by due process. *See Hill*, 472 U.S. at 455. Dixon has not alleged sufficient facts relating to the masturbation charge to support a claim that he received any sanction implicating due process, or that there was a lack of evidence to support the charge. For all of these reasons, the Court will grant the Motion as to Dixon's due process claims.

### E. Negligence

Dixon alleges negligence by the Correctional Defendants in relation to the claims set forth in his Complaint. Where all of Dixon's federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over these state law claims and thus will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3) (2018); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

## II. Unserved Defendants

Defendants Sgt. Jane Doe Miller, C.O. II John Doe Walt, C.O. II John Doe Dolly, and Nurse Tammy have not been served with the Complaint. Because Dixon is an inmate who is proceeding *in forma pauperis*, the Court reviews the allegations against these unserved Defendants to assess whether Dixon has stated a plausible claim for relief against them. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). For the reasons discussed above relating to the Correctional Defendants, Dixon has also failed to allege sufficient facts to support constitutional claims under the relevant standards as to Miller, Walt, and Dolly. *See supra* parts I. C-D.

Although Dixon claims that Nurse Tammy refused to give him medication on two occasions, he does not provide specific factual details that would support a claim that these limited deprivations violated the Eighth Amendment. *See Iqbal*, 556 U.S. at 678 (stating that the complaint must allege enough facts to state a plausible claim for relief). An Eighth Amendment claim based on inadequate medical care requires a showing of deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff knew of and disregarded the risk posed by the serious medical need by failing either to provide the needed medical care or to ensure that it was available. *See Iko*, 535 F.3d at 241. In particular, Dixon has identified neither a serious medical need nor

facts that would support the conclusion that missing his medication on these two occasions created a substantial risk to his health of which the nurse was aware. *Id.* Because Dixon has failed to state a plausible claim for relief against the unserved Defendants, the claims against them will be dismissed. *See* 28 U.S.C. § 1915A(b).

### III. Motion for a Preliminary Injunction

Since the filing of the Correctional Defendants' Motion, Dixon has filed a Motion for a Preliminary Injunction seeking a transfer to another prison on the grounds that he is in imminent danger at NBCI because he is housed in a unit where several of Defendants work. Dixon states that he has received additional infractions and cannot receive a fair hearing at NBCI, and that Correctional Officers E. Richie and T. Fleck have retaliated against him by confiscating his religious and legal materials. He asserts that he is constantly under emotional and psychological distress because of the presence of Defendants at NBCI.

To obtain a preliminary injunction, a plaintiff must establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). Because a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The plaintiff must satisfy all four of these requirements. *See Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013).

As discussed above, Dixon cannot succeed on the merits of his claim. Because the first requirement cannot be met, the Court will deny the Motion for a Preliminary Injunction. To the

extent that Dixon believes that he has been subject to new incidents that may violate the law or to retaliation, he should in the first instance pursue and exhaust available administrative remedies.

## CONCLUSION

For the foregoing reasons, the Correctional Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment will be GRANTED; the claims against the unserved Defendants, Sgt. Jane Doe Miller, CO II John Doe Walt, CO II John Doe Dolly, and Nurse Tammy will be dismissed; and Dixon's Motion for a Preliminary Injunction will be denied. A separate Order shall issue.

Date: March 10, 2020

THEODORE D. CHUANG
United States District Judge